517 A.2d 786

**Rose CASTIGLIONE**

**v.**

**The JOHNS HOPKINS HOSPITAL.**

**No. 123, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 3, 1986.

326

Carmen D. Hernandez (C. Christopher Brown and Brown & Goldstein, on the brief), Baltimore, for appellant.

Ronald W. Taylor (George W. Johnston and Venable, Baetjer & Howard, on the brief), Baltimore, for appellee.

Argued before BLOOM, ROSALYN B. BELL and KARWACKI, JJ.

BLOOM, J.

In this action for breach of an alleged employment contract, appellant, Rose Castiglione, seeks reversal of a decision of the Circuit Court for Baltimore City granting the motion of her employer, The Johns Hopkins Hospital, appellee, to dismiss the action or, in the alternative, to grant summary judgment. We will affirm the decision of the court below, treated here as a summary judgment in light of the trial court's consideration of matters outside the pleadings.

### Facts

Appellant, who had been employed by The Johns Hopkins Hospital as a respiratory therapist, was discharged on September 20, 1984. Prior to her discharge, appellant attended an evaluation hearing conducted by her employer, but the Hospital did not discuss or review that evaluation with appellant before discharging her. In November, 1984, appellant filed a "non-bargaining unit appeal" form with appellee pursuant to hospital grievance procedure policies, requesting reinstatement and back pay. Several months later, appellee offered to reinstate appellant to her position but rejected any back pay award. Additionally, the proposed settlement would have reinstated appellant on a "probationary basis." Appellant rejected the proposed settlement.

### Proceedings

On June 19, 1985, appellant instituted this action for breach of an alleged employment contract. In her unverified complaint appellant claimed that the failure of her employer to review with her the findings of the last evalua-

tion constituted a violation of procedures set forth for performance appraisals in "The Johns Hopkins Hospital Employee Handbook." The provisions of the Handbook quoted in appellant's complaint were as follows:

*IV—Performance Appraisals*

Your ... supervisor will review your job *performance with you* at least once every (12) months.

The purpose of employee performance appraisals are to: (1) inform you of your job progress and areas needing improvement, if any (2) determine and record special talents, skills and capabilities that might otherwise go unnoticed or unrecognized (3) provide an opportunity for each employee to discuss problems and interests with his/her supervisor and (4) use as a guide for wage adjustments, promotions, disciplinary actions, reassignments, etc. (Emphasis in complaint.)

Appellant alleged that the failure to provide such a review prior to her discharge constituted a violation on the part of appellee of its "unilateral contract and promises made with its employees as set forth in the expressed provisions of its written personnel policy and communicated to its employees," referring to the above-quoted material. No materials were submitted with appellant's complaint other than the proposed reinstatement agreement.

Instead of answering the complaint, appellee filed a motion to dismiss, or in the alternative, for summary judgment, contending, *inter alia,* that the performance appraisal policy as quoted in appellant's complaint did not constitute a binding employment contract with appellee. In a memorandum in support of the motion, it asserted that "The Johns Hopkins Hospital Employee Handbook" contained an express disclaimer that any provisions of the policy manual constituted a contract. The memorandum quoted the disclaimer in the manual as follows:

"Finally, this handbook does not constitute an express or implied contract. The employee may separate from his/her employment at any time; the Hospital reserves the right to do the same."

Another relevant portion of the manual quoted in appellee's memorandum follows:

"All managerial and administrative functions, responsibilities, and prerogatives entrusted to and conferred upon employers inherently and by law are retained and vested exclusively with [the Defendant Hospital], including but not limited to the right to exercise our judgement to establish and administer policies, practices, and procedures and change them, to direct and discipline our workforce and increase its efficiency, and to take whatever action is necessary in our judgement to operate [the Defendant Hospital]."

A copy of appellee's then current Employee's Handbook, from which the above quotations were taken, was filed as Exhibit No. 1 with the memorandum in support of appellee's motion.

In light of the quoted passages from the Handbook, appellee argued that there was no legally binding contract of employment under Maryland law.[1]

At no time after submission by the appellee of its motion and supporting memorandum did appellant contest the authenticity, materiality, or admissibility of the exhibit filed

---

1. Appellee's memorandum in support of its motion referred to, but did not quote in its entirety, the evaluation and review provisions cited by appellant in her complaint, *supra*. Appellee's Exhibit No. 1, "The Johns Hopkins Hospital Employee Handbook" did, however, contain language virtually identical to that quoted in appellant's complaint. The relevant provisions in Exhibit No. 1 were as follows:

IV. PERFORMANCE APPRAISALS

Your supervisor will review your job performance with you at least once every twelve (12) months. The purposes of employee performance appraisals are to: (1) inform you of your job progress and areas needing improvement, if any (2) determine and record special talents, skills and capabilities that might otherwise go unnoticed or unrecognized (3) provide an opportunity for each employee to discuss problems and interests with his/her supervisor and (4) use as a guide for wage adjustments, promotions, disciplinary actions, reassignments, etc.

The nature and effect of the minor discrepancies between the evaluation and review provisions cited by appellant and those contained in appellee's Exhibit No. 1 are discussed, *infra,* at note 4.

with the memorandum. In her response to appellee's motion, appellant did not question the exhibited document or the existence of the disclaimer language therein, but rather denied that it had legal effectiveness because of the disparity in the bargaining power of the parties.[2] In a reply to appellant's response, appellee urged that appellant had conceded the existence of the disclaimer and disagreed with appellant's arguments respecting the legal effect of such a disclaimer. Appellant filed a rebuttal to that reply, without challenging the authenticity of Exhibit No. 1 or the language quoted therefrom. At the hearing on appellee's motion there was no discussion regarding the existence or non-existence of a disclaimer, nor was there any objection to the authenticity or lack of verification of the exhibited handbook.

On November 6, 1985, the trial court granted appellee's motion, ruling that because of the disclaimer language therein "The Johns Hopkins Hospital Employee Handbook" did not constitute an employment contract.

### Issues

The issues raised on appeal are as follows:

1. Did the lower court err in granting summary judgment on the basis of an unverified exhibit without accompanying affidavit? Alternatively, whether there was any other suitable basis for entry of summary judgment?

2. Whether an appellant for the first time on appeal may raise questions as to the competence, materiality, or admissibility of an unverified exhibit in contesting a grant of summary judgment?

---

2. In the response, appellant questions whether the hospital could "blithely disavow these legal obligations by the cloaking device of a prestated comment that this handbook does not constitute an express or implied contract."

3. Whether appellee was entitled to a summary judgment as a matter of law under *Staggs v. Blue Cross of Maryland?*

## I

Rule 2–322(b) provides that where, on a motion to dismiss, the court considers matters outside the pleadings, the motion shall be treated as one for summary judgment. Rule 2–322(b), Md.Code Ann., Maryland Rules (1986). Since the court below based its decision on the unverified exhibit attached to the memorandum supporting appellee's motion, we shall treat the decision as a grant of summary judgment.

A grant of summary judgment is appropriate only where a two-fold test is met. The movant for summary judgment must clearly demonstrate the absence of any genuine issue of material fact and must also demonstrate that he is entitled to judgment as a matter of law. Rule 2–501(d), Md.Code Ann., Maryland Rules (1986). *See also Metropolitan Mortgage Fund, Inc. v. Basiliko,* 44 Md.App. 158, 162, 407 A.2d 773 (1979); *Dietz v. Moore,* 277 Md. 1, 4, 351 A.2d 428 (1976); *Vanhook v. Merchants Mutual Insurance Co.,* 22 Md.App. 22, 26, 321 A.2d 540 (1974). The court, in ruling on a motion for summary judgment, must consider "the pleadings, depositions, answers to interrogatories, admissions and affidavits" submitted by the parties. Rule 2–501(e), Md.Code Ann., Md. Rules (1986).

At a hearing on a motion for summary judgment, the function of the judge is "much the same as that he performs at the close of all the evidence in a jury trial when motions for directed verdict ... require him to determine whether an issue requires resolution by a jury, or is to be decided by the court as a matter of law." 22 Md.App. at 25–26, 321 A.2d 540 (quoting *Knisley v. Keller,* 11 Md.App. 269, 272–73, 273 A.2d 624 (1971)). In determining whether a factual dispute exists, all inferences are to be drawn in the light most favorable to the nonmoving party. *DiGrazia*

*v. County Executive for Montgomery,* 288 Md. 437, 445, 418 A.2d 1191 (1980); *Berkey v. Delia,* 287 Md. 302, 306, 413 A.2d 170 (1980).

Appellant's complaint is that the document on which the trial court relied in granting summary judgment, appellee's Exhibit No. 1, was not authenticated. Appellant urges there was nothing under oath by way of affidavit, deposition, interrogatory answer, or otherwise to verify that the exhibited manual was a true and accurate copy of the actual document applicable to appellant.

■ In *Vanhook v. Merchants Mutual Insurance Co., supra,* this Court specified several bases for granting summary judgment. The party moving for summary judgment may place before the trial court the facts necessary to a determination for summary judgment (1) by affidavit, (2) by deposition, (3) by answers to interrogatories, (4) by admissions of facts, (5) by stipulation or concession, or (6) by pleadings. *Vanhook,* 22 Md.App. at 26–27, 321 A.2d 540; *Washington Homes v. Interstate Land Development Co., Inc.,* 281 Md. 712, 717, 382 A.2d 555 (1978); *Digrazia, supra,* 288 Md. at 455, 418 A.2d 1191 (1977). Pleadings alone may serve as the basis for providing the necessary factual prerequisites only where the "[a]llegations and the response, or lack of response ... establish facts as admitted or deemed to be admitted, for the purpose of the case." [3] 22 Md.App. at 26–27, 321 A.2d 540.

---

3. While this Court in *Vanhook, supra,* in reference to admissions contained in pleadings, cited certain rules related to pleading admissions that are not specifically applicable here, we are convinced that there is an analog with respect to the type of pleading concessions herein involved. *Vanhook* cited former Rules 311, 326 and 342 as "examples" of pleading admissions containing facts sufficient to form the basis for summary judgment disposition. Rule 311 dealt with admissions related to the existence of a partnership; Rule 326, the production of written instruments; Rule 342, pleas in bar; Rule 372, the treatment as admissions of failures to deny in an answer. This list of rules was not intended to be exhaustive. These rules were superseded by Rules 2–303, 2–322 and 2–346. Md.Ann.Code, Md. Rules of Procedure (1986).

It is clear that there were no affidavits in the matter at hand, no depositions or interrogatories, and no admissions of fact as contemplated in *Vanhook*. The "admissions" of fact referred to in that case related to written requests for admissions of facts and the genuineness of documents served upon a party. *Id.* (referencing former Rule 421, now Rule 2–424, Md.Code Ann., Md. Rules (1986)). Nevertheless, the pleadings in the case *sub judice* do provide the factual prerequisites for a summary judgment.

■ Ordinarily, the facts alleged in pleadings are not, by that means alone, before the court as facts for the purposes of summary judgment disposition. *Vanhook, supra,* 22 Md.App. at 27, 321 A.2d 540. But, where, as in the instant case, one party in its pleadings concedes the existence of the only facts material[4] to a resolution of the summary

---

4. Appellant argues that other discrepancies of record exist which demonstrate that a genuine issue of fact remains as to the contents and applicability to appellant of appellee's Exhibit No. 1. At oral argument, appellant urged that there were several differences between the employee review and evaluation provisions quoted in appellant's complaint and those contained in appellee's Exhibit No. 1. The discrepancies are as follows: (1) While an ellipsis separates the first two words of the quoted provisions in appellant's complaint, no additional words are found in the corresponding passage in appellee's Exhibit No. 1; (2) whereas certain words are underscored in the relevant passage in appellant's complaint, they are not so highlighted in appellee's exhibit; (3) the word "purpose" appears in the singular in appellant's complaint, whereas it is in the plural form in appellee's exhibit. Appellant urges these discrepancies raise the inference that the manual disseminated to her when she was initially hired is not the same manual as that displayed by appellee as Exhibit No. 1. At oral argument, attorney for appellee informed the court that the manual submitted as Exhibit No. 1 became effective approximately one month prior to appellant's discharge.

Only a genuine dispute as to a material fact will preclude a grant of summary judgment. Rule 2–501(a), Md.Code Ann., Md. Rules (1986); *Mason v. Henderson,* 14 Md.App. 370, 374, 286 A.2d 825 (1972); *Brewer v. Mele,* 267 Md. 437, 441, 298 A.2d 156 (1972). A "material" fact is one which somehow affects the resolution of the case. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Washington Homes, supra,* 281 Md. at 716, 382 A.2d 555; *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974).

Appellant has failed to demonstrate how the above discrepancies could affect the outcome of this case. It may well be that the

judgment motion, the concessions in these pleadings may serve as the basis for a finding of a lack of a genuine dispute as to the facts. *See* P. Niemeyer & L. Richards, *Maryland Rules Commentary* Rule 2–501, at p. 252 (1984). Despite the repeated reference by appellee, in its memorandum in support of summary judgment, to the existence and language of the disclaimer contained in "The Johns Hopkins Hospital Employee Handbook," appellant, in her response and rebuttal to the motion, did not contest the existence of appellee's disclaimer of any express or implied contract.

■■■■ Our answer to the first issue raised by appellant is that concessions in pleadings may serve as a basis for summary judgment even in the absence of affidavits, depositions, or other sworn testimony. Even assuming the trial court erred in basing its summary judgment entry on an unverified exhibit, the pleading admissions of record establish there was a suitable basis for a grant of summary judgment by the court below. It is well-established that even where a trial judge has based an entry of summary judgment on an erroneous ground, an appellate court may affirm the judgment on any ground supported by the

employee manual in effect at the time appellant's employment was terminated is not the same manual which was disseminated to her when she was first hired. Even if the review provisions of the manual in effect at appellant's initial hiring constituted an implied contract, a matter we need not decide here, the later manual would have superseded any earlier editions. By continuing to work for appellee after the new manual's issuance, appellant, by her conduct, impliedly would have assented to a modification of her employment agreement. *See generally United States v. Gilman,* 360 F.Supp. 828 (D.Md.1973); *Thomas v. Hudson Motor Car Co.,* 226 Md. 456, 174 A.2d 181 (1961); *Cole v. Wilbanks,* 226 Md. 34, 171 A.2d 711 (1961); 17 Am.Jur.2d *Contracts* §§ 458, 459, 493 (1964 & 1986 Supp.) and cases cited therein.

The minor variations in the manuals noted by appellant are not material for the additional reason that the uncontested existence of a contractual disclaimer is dispositive of the matter at hand. *See infra,* Section III.

record. *See* 6 *Moore's Federal Practice* ¶ 56.27, at p. 56–1561 (1985 & 1986 Supp.) and cases cited therein.[5]

■ It may be additionally noted that party admissions in pleadings, admissible under an exception to the rule against hearsay, are considered to be substantive evidence of the facts admitted. *See Aetna Casualty & Surety Co. v. Kuhl,* 296 Md. 446, 455, 463 A.2d 822 (1983); *Burkowske v. Church Hospital Corp.,* 50 Md.App. 515, 519, 439 A.2d 40 (1982); 29 Am.Jur.2d *Evidence* § 687 (1964 & 1986 Supp.).

## II

■ Even if we had not answered the first issue as we did, we would reach the same ultimate conclusion because our answer to the second issue is that an appellant may not raise for the first time on appeal a question as to the competency, materiality or admissibility of an unverified document relied on by the court in granting summary judgment. ·

It is well-established that objections to the form or admissibility of evidence submitted in support of a motion for summary judgment cannot be raised for the first time on appeal. *Wyand v. Patterson Agency, Inc.,* 266 Md. 456, 460–61, 295 A.2d 773 (1972); *Fishman Construction Co. v. Hansen,* 238 Md. 418, 429, 209 A.2d 605 (1964); *Guerassio v. American Bankers Corp.,* 236 Md. 500, 504–05, 204 A.2d 568 (1964); *Tellez v. Canton Railroad Co.,* 212 Md. 423, 430, 129 A.2d 809 (1957). Only objections relating to the "substantive deficiency of the affidavit in setting forth the facts necessary for a *prima facie* case" or defense may be initially raised on appeal. *Wyand, supra,* 266 Md. at 461, 295 A.2d 773. *See also, Mercier v. O'Neill Associates, Inc.,* 249 Md. 286, 287 n. 1, 239 A.2d 564 (1968).

■ Here, appellant seeks to attack only the form of the document, *i.e.,* the lack of an affidavit or other verification

---

5. Because Maryland's rule governing summary judgment was modeled after Federal Rule 56(d), federal authority is persuasive. *Berkey,* 287 Md. at 306, 413 A.2d 170.

of the document's authenticity, not the sufficiency of its contents. The document, otherwise inadmissible for its lack of testimonial assurance of authenticity, was accepted and considered by the court in the absence of an objection thereto, and it contained the facts necessary to entitle appellee to summary judgment as a matter of law. Had an objection or motion to strike been made, appellee would have had the opportunity to submit proper authentication. Appellant will not now be heard on appeal to object for the first time to the admission of the exhibit and its consideration by the court. *See* P. Niemeyer & L. Richards, *Maryland Rules Commentary*, Rule 2–501, at 252 (1984). *See also* Rule 2–517(a), Md. Rules, Md.Code Ann. (1986); *Davis v. Sears, Roebuck & Co.*, 708 F.2d 862, 864 (1st Cir.1983); *Noblett v. General Elec. Credit Corp.*, 400 F.2d 442, 445, *cert. denied*, 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271 (10th Cir.1968); *Auto Drive-Away Company of Hialeah, Inc. v. I.C.C.*, 360 F.2d 446 (5th Cir.1966); 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2738 at 507–08 (1983) and cases cited therein.[6]

### III

Having decided that the only material fact which could be disputed by appellant—the existence of a contractual disclaimer—was properly considered by the court below, and that appellant is precluded from disputing its existence on

---

**6.** Appellant, relying on *Cottman v. Cottman*, 56 Md.App. 413, 468 A.2d 131 (1980), urges that notwithstanding the failure of a party to preserve the issue below, an appellate court may determine that an affidavit is defective in form and therefore insufficient to support summary judgment entry. In *Cottman*, we held that the trial court erred in granting one defendant's motion for summary judgment where the supporting affidavit failed to state that it was "made on [the] personal knowledge" of the affiant. While the appellant in *Cottman* raised the issue of the affidavit's defectiveness on appeal, the appellees therein made no contention that appellant had failed to preserve the issue. The issue may or may not have been preserved for appellate review in *Cottman;* we simply had no reason to address it. In the case *sub judice,* however, appellee did raise the issue of appellant's failure to preserve the point for review.

appeal, we turn now to the question of whether, on the basis of the undisputed facts, appellee was entitled to summary judgment as a matter of law.

Briefly summarizing the material facts, we note that appellant was not hired for a term of definite duration and, therefore, was an "at will" employee. *Vincent v. Palmer,* 179 Md. 365, 19 A.2d 183 (1941). Appellant was discharged after an evaluation hearing without being afforded an evaluation review in accordance with the provisions of a published handbook distributed to employees. The handbook contained a statement that it "does not constitute an express or implied contract." Other provisions of the manual reserved appellee's discretion to "discipline our workforce."

We find no error in the circuit court's determination that on the basis of these facts appellee was entitled to summary judgment as a matter of law.

In Maryland, an employment contract of indefinite duration is considered employment "at will" which, with few exceptions, may be terminated without cause by either party at any time. *Page v. Carolina Coach Co.,* 667 F.2d 1156 (4th Cir.1982); *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). In two limited situations an "at will" employee may not be discharged without cause. First, the rule that employment contracts of indefinite duration can be legally terminated at any time is inapplicable where the employee is discharged for exercising constitutionally protected rights. *DeBleecker v. Montgomery County,* 292 Md. 498, 506 (1982), citing *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *See also, Adler, supra,* 291 Md. at 47, 432 A.2d 464 (abusive discharge in contravention of public policy). This exception is not applicable in the case *sub judice.* The second exception, adopted by this court in *Staggs v. Blue Cross of Maryland, Inc.,* 61 Md.App. 381, 486 A.2d 798 (1985), *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985), is similarly of no assistance to appellant.

■ In *Staggs,* the appellants, former employees of Blue Cross, did not have a fixed contract of employment, although all were covered by certain personnel provisions set forth in a policy memorandum. Appellants, appealing a grant of summary judgment in favor of the employer, had alleged that portions of the policy memorandum allowed termination of their employment only for cause. *Id.* at 384, 486 A.2d 798. A provision of the memorandum stated specifically that an employee could be dismissed "at any time for cause." *Id.* at 385, 486 A.2d 798. The policy memorandum further provided that multiple counseling sessions would precede final dismissal. *Id.* at 384–85, 486 A.2d 798.

In *Staggs,* we found that the contracts in dispute, though of indefinite duration, had been so modified by the personnel policy statement as to require an exception to the common law "at will" doctrine. *Id.* at 388, 392, 486 A.2d 798. We held that provisions in personnel policy statements "that *limit the employer's discretion* to terminate an indefinite employment or that set forth a *required procedure for termination of such employment* may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." *Id.* at 392, 486 A.2d 798 (emphasis added). Based on the record, we concluded that summary judgment was inappropriate, there being a need for determination at trial whether the employees were in fact dismissed for "cause," as required by the policy memorandum. *Id.* at 393, 486 A.2d 798. We cautioned, however, that "[n]ot every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Id.* at 392, 486 A.2d 798. We warned that, " 'General statements of policy are no more than that and do not meet the contractual requirements for an offer.' " *Id.,* quoting *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626 (Minn.1983).

The disclaimer language in the policy manual quoted in appellee's pleadings does not indicate any intent to limit the

discretion of the appellee to discharge only for cause, as was the case in *Staggs*. Moreover, other portions of the manual quoted in appellee's memorandum actually served to reserve the rights of appellee "to direct and discipline our workforce ... and to take whatever action is necessary in our judgment to operate [the Defendant Hospital]." Finally, unlike the situation in *Staggs*, in this case the appellee expressly negated, in a clear and conspicuous manner, any contract based upon the handbook for a definite term and reserved the right to discharge its employees at any time. The provisions for review, when viewed in the larger context, were but "general policy statements" not amounting to an offer of employment for a definite term or requiring cause for dismissal.

Other decisions finding in favor of discharged employees have generally involved reliance by employees on policy manuals or oral promises that limited the discretion of the employer to fire except for cause or that contained job security provisions and pre-dismissal reprimand procedures more detailed than in the case *sub judice*. *See, e.g., Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 884 (1980) (policy manual allowed discharge "for just cause only"); *Pine River State Bank v. Mettille*, 333 N.W.2d at 626 n. 3 (multiple stage reprimand procedures required before job termination).

While courts of other states have the *Staggs*-type exception to the "at will" doctrine, *see, e.g., Hammond v. North Dakota State Personnel Bd.*, 345 N.W.2d 359, 361 (N.D.1984); *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275, 277 (S.D.1983); *Piacitelli v. Southern Utah State College*, 636 P.2d 1063, 1067 (Utah 1981), the cases have also recognized an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent. *See Toussaint*, 292 N.W.2d at 891, *Pine River*, 333 N.W.2d at 627. This court specifically relied on *Toussaint* and *Pine River* in *Staggs*. 61 Md.App. at 389–390, 486 A.2d 798. *See also, Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 455 (6th Cir.1986); *Fletcher v. Wesley*

*Medical Center*, 585 F.Supp. 1260, 1264 (D.Kan.1984); *Batchelor v. Sears, Roebuck & Co.*, 574 F.Supp. 1480, 1488 (E.D.Mich.1983); *Crain v. Burroughs Corp.*, 560 F.Supp. 849, 852 (C.D.Cal.1983); *Summers v. Sears, Roebuck & Co.*, 549 F.Supp. 1157, 1161 (E.D.Mich.1982); *Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 302 N.W.2d 307, 310–11 (1981); *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170, 174 (1984).

The purpose of the *Staggs* exception to the at will doctrine is to protect the legitimate expectations of employees who have justifiably relied on manual provisions precluding job termination except for cause. *See, e.g., Toussaint, supra*, 292 N.W.2d at 895. Justifiable reliance is precluded where, as in the case at hand, contractual intent has been expressly disclaimed.

Appellant's final contention, that the disclaimer provision of the hospital manual should not be enforced because it is inequitable, is without merit. Appellant has cited no cases which would support such a contention. In the non-commercial context, courts are reluctant to strike provisions within agreements voluntarily entered into between the parties in the absence of fraud, mistake or oppression. 17 Am.Jur.2d *Contracts* § 192 (1964) and cases cited therein. There were no contentions of fraud, mistake or oppression in this case.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.